IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEHEMIAH ROBINSON, | No. CIV S-05-1499-LKK-CMK-P |
| Plaintiff, | |
| vs. | ORDER |
| M. PENNER, et al., | |
| Defendants. | |
| _____/ | |

   Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 31). The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).

**I. BACKGROUND**

   In the first amended complaint, plaintiff names the following as defendants: M. Penner, B. Swift, L. Johnson-Dovey, Vancor, Todd, Lateri, J. Turella, G. Borges, J. Stocker, the director of the California Department of Corrections and Rehabilitation ("CDCR"), and an

///

1

unknown "custody officer."[1]  Plaintiff seeks compensatory and punitive damages.

Plaintiff states that defendant Penner diagnosed him with "severe significant collagen vascular disease," and that another doctor diagnosed him with "post-traumatic degenerative arthritis."  Plaintiff states that he suffers pain in his "major joints, muscles, back, hands, ankles, [and] wrists."  He also states that he experiences joint swelling and weight loss.  Plaintiff says that his condition worsened upon his incarceration in 2000.  He attributes the problem to the cold climate in Northern California.

Plaintiff says that, upon his arrival at prison, he made officials aware of his medical problems.  On December 5, 2000, plaintiff was seen at the prison medical clinic for an orthopedic evaluation.  Plaintiff states that the doctor who examined him recommended knee surgery.  On December 10, 2002, plaintiff was taken to Doctor's Hospital in Manteca, California, for a knee ligament reconstruction operation.

According to plaintiff, on June 9, 2003, he notified prison officials that he was experiencing severe pain and swelling and an inability to walk at the time.  Over the next three days, plaintiff continued to submit requests to go to the clinic.  Plaintiff claims that he did not receive adequate physical therapy after his knee surgery and that, on September 25, 2003, he was again taken to an outside medical facility.  There, a bone scan was performed which revealed a "lateral meniscal tear" in the knee.  Plaintiff states that he filed inmate grievances to the highest level of review concerning his knee problem.  He states that his grievances were partially granted at the first level by defendant Borges; partially granted at the second level by defendants Turella and Lateri; and denied at the third level by defendant Stocker.

/ / /

---

[1] In the original complaint, plaintiff named:  Sahota; Penner; Swift; King; and Johnson-Dovey.  Plaintiff also sued an unnamed prison official as well as the Director of the CDCR and the Warden of California State Prison, Sacramento.  The operative first amended complaint, which supercedes the original, does not name Sahota, King, or the prison warden.  The Clerk of the Court will be directed to update the court's docket to reflect the defendants named in the first amended complaint.

1       Plaintiff states that, on January 28, 2005, he filed a "reasonable modification or
2  accommodation request" which was denied by defendant Johnson-Dovey as "not meeting ADA
3  criteria." After submitting a health care service request form complaining of "severe pain,"
4  plaintiff was examined on February 3, 2005, by defendant Penner, a prison physician. Plaintiff
5  claims that defendant Penner signed an order that same day documenting plaintiff's medical need
6  to be transferred to a prison in a warmer climate. Plaintiff alleges that he was informed that he
7  would be notified regarding his transfer within two weeks, but that this was never done.
8       Plaintiff states that, on February 18, 2005, he filed a prison grievance requesting
9  to be transferred. That request was allegedly reviewed by defendant Johnson-Dovey.
10 Specifically plaintiff states that defendant Johnson-Dovey denied the grievance because no
11 February 3, 2005, order existed at all, and that, on February 23, 2005, defendant Johnson-Dovey
12 requested that plaintiff provide additional information in support of his request. Specifically,
13 plaintiff alleges that defendant Johnson-Dovey had requested to see a copy of the February 3,
14 2005, order from defendant Penner. Plaintiff asserts that, on February 25, 2005, he spoke with
15 defendant Penner about the February 3, 2005, order and was told by defendant Penner that the
16 appropriate officials would be provided with the order. Plaintiff states that he re-submitted his
17 transfer request on February 28, 2005, along with a statement as to defendant Penner's response
18 concerning the February 3, 2005, order.
19      Plaintiff claims that, on March 10, 2005, he submitted a request for the status of
20 his transfer request. The next day, plaintiff received a response indicating that he would receive
21 a decision soon. Meanwhile, plaintiff states that he requested health care services again on
22 March 16, 2005, for "severe pain," and that he was seen at the prison medical clinic on March
23 21, 2005. Plaintiff asserts that he was informed at that time that he was on the list to be seen by
24 a registered nurse. After waiting over three hours, plaintiff was seen by the nurse, whereupon
25 plaintiff conveyed the foregoing. The nurse informed plaintiff that he would be informed of the
26 status of his transfer request at a later date. Plaintiff also states that he was never treated for his

problem that day, but that he was told by the nurse that another medical transfer order would be submitted to defendant Penner.

Plaintiff states that he went to the medical clinic again on March 23, 2005, and was told that he would be seen by a doctor. Plaintiff also states that, while he was in the medical clinic on March 23, 2005, he went to the nurse's office and asked about the status of his transfer request. He claims that he was informed that defendant Penner had signed a second medical transfer order on March 21, 2005, and that he would receive a copy of the "medical chrono 128-C" within three weeks. Plaintiff asserts that another inmate present in the medical clinic on March 23, 2005, overheard a conversation involving defendant Swift concerning plaintiff's transfer request. Specifically, plaintiff learned from this conversation that an unnamed prison official instructed defendant Swift to discontinue plaintiff's transfer request. Plaintiff claims that, after he requested a copy of the discontinuation order, defendant Swift ". . . suddenly became belligerent for no apparent reason" and informed him that he would not be allowed to see the doctor. Plaintiff states that he told defendant Swift that he would file an inmate grievance based on denial of medical care and conspiracy to deprive him of a transfer to a different prison. Plaintiff states that, "after learning what [defendant] Swift had done," defendant Penner did in fact sign another order on March 21, 2005. Additionally, plaintiff claims that he was treated by defendant Todd on March 24, 2005, for "severe pain," but that he refused to prescribe pain medication.

Plaintiff states that, on April 12, 2005, he again reported to the medical clinic and that, while there, defendant Vancor introduced herself and said that she was present to "observe the issue of the recent physician's order dated 3-21-05, authored by . . . [defendant] Penner . . . and submitted for processing by King. . . ." Plaintiff claims that he was then informed by prison officials that the March 21, 2005, order had been discontinued by defendant Todd, on her own authority, as unwarranted. Plaintiff asserts that defendant Vancor was present. Plaintiff states that he filed another grievance the same day against defendants Penner, King, Swift, and Vancor

4

"for the acts committed and for not reporting the misconduct," but that defendant Johnson-Dovey refused or neglected to acknowledge or review it. As to his knee problems, plaintiff states that he made defendant Todd aware of this problem during the April 12th visit. Specifically, plaintiff pointed out the need for medication. According to plaintiff, however, defendant Todd "refused to examine [him] and denied him pain medication."

Plaintiff was seen at the medical clinic again on April 20, 2005. Plaintiff states that his vitals were taken and that he was informed that the chief medical officer instructed that plaintiff be given either Tylenol or Motrin IB for his pain. Plaintiff states that he told prison officials that his medical file reflects that Tylenol is ineffective and Motrin IB causes him severe stomach pain. Plaintiff claims that officials refused to review his medical file.

Plaintiff says that he filed another inmate grievance on May 16, 2005, against defendant Johnson-Dovey for failing to address his prior grievances. Again, plaintiff alleges that defendant Johnson-Dovey failed to address this grievance.

As to the legal nature of his claims, plaintiff alleges:

> This is an action arising under the Eight and Fourteenth Amendments of the Constitution of the United States and Title 42 of the U.S. Code Section 1981 and 1983, alleging violations of plaintiff's civil and human rights while in the custody of the California Department of Correction and medical staff and correctional officers therein at California State Prison, Sacramento . . . .

Plaintiff claims that defendants Penner, King, Swift, unknown custody official, Johnson-Dovey, Vancor, and the CDCR director "conspired to deny plaintiff's medical necessity transfer and deliberately indifferently denied plaintiff medical treatment and prescribed medication." Plaintiff asserts that defendants Johnson-Dovey, unknown custody official, Swift, Todd, and the CDCR director "conspired to deny plaintiff's right to exhaust administrative remedies." He also claims that defendants Lateri, Turella, Borges, Stocker, and the CDCR director "denied plaintiff's medical treatment and prescribed medication, which has caused constant pain and deformity of the knee."

Plaintiff also states specific allegations as to each individual defendant. Plaintiff claims that defendant Penner disregarded the misconduct committed by other defendants, knowing that plaintiff suffers from medical problems which cause extreme pain if left untreated. As to defendant Swift, plaintiff alleges that she is liable for discontinuing the February 3, 2005, order and for demonstrating a hostile attitude, and claims that defendant Todd is liable because he "interfered with a medical judgment by non-medical factors, conspired with [defendant] Swift . . . to discontinue the . . . order dated 3-21-05." Plaintiff asserts that defendant Johnson-Dovey is liable because she "possibly contacted [defendant] Swift and told [her] to discontinue the physician's order dated 2-3-05, knowing plaintiff suffers from a serious medical condition. . . ." He also asserts that defendant Johnson-Dovey violated his rights by allegedly not acknowledging his grievances, thereby frustrating his ability to exhaust administrative remedies. Plaintiff alleges that defendant Vancor conspired in the discontinuation of the March 21, 2005, second order. Plaintiff claims that defendants Lateri, Turella, Borges, and Stocker are liable because they denied plaintiff knee surgery knowing that a serious medical condition existed. Finally, plaintiff states that the CDCR director is liable because he refused to review plaintiff's prison grievances and denied him knee surgery.

## II. DISCUSSION

According to plaintiff, the first amended complaint raises a claim under the First Amendment based on interference with his ability to petition for redress through the prison grievance process, and a claim under the Eighth Amendment based on denial of and/or interference with medical care. The First Amendment claim is raised for the first time in the amended complaint.[2] The Eighth Amendment claim was raised in the original complaint. In

---

[2] As to any First Amendment claim, plaintiff asserts that defendants frustrated his access to redress by refusing to acknowledge his prison grievances, or by improperly denying them. Plaintiff has not, however, alleged any facts which would suggest any "actual injury,"

dismissing the claim with leave to amend, the court stated:

> As to plaintiff's allegations concerning defendants' alleged conspiracy to deny him a medically necessary transfer to another prison, plaintiff has not alleged a serious medical condition necessitating such transfer. Absent a serious condition, no conduct defendants take with respect to the prison transfer can give rise to an Eighth Amendment claim. In this case, plaintiff alleges that the prison transfer was necessitated because he is often in "severe pain." Even if this amounts to a serious condition, plaintiff states in his complaint that he was prescribed pain relievers. To the extent plaintiff's claim is based on his opinion that he should have been prescribed some other medication, such a claim is not cognizable under the Eighth Amendment.

The court also stated:

> Here, plaintiff asserts that the director of the California Department of Corrections . . . should be held liable because [he] knew or should have known of the other defendants' violation of his constitutional rights, and because it is the policy of the California Department of Corrections to deprive prisoners medical attention. However, as discussed above, the court concludes that plaintiff has failed to state a claim for deprivation of his Eighth Amendment rights. Therefore, the supervisory defendants identified in plaintiff's complaint cannot be held liable.

The court finds that plaintiff has cured these defects. Specifically, plaintiff has alleged serious medical conditions – "severe significant collagen vascular disease" and "post-traumatic degenerative arthritis." He also alleges problems with his knee which ultimately required surgery. Plaintiff has, therefore, made out a cognizable Eighth Amendment claim.

/ / /

/ / /

/ / /

/ / /

/ / /

---

such as prejudice with respect to contemplated or existing litigation or the inability to meet a filing deadline or present a claim. See Lewis v. Casey, 518 U.S. 343 (1996). In fact, notwithstanding defendants' alleged conduct, plaintiff was able to bring this action. Therefore, at best, plaintiff's First Amendment allegations are another way of alleging that defendants interfered with and/or denied medical treatment.

### III. CONCLUSION

The first amended complaint appears to state a cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b).[3] If the allegations are proven, plaintiff has a reasonable opportunity to prevail on the merits of this action. The court, therefore, finds that service is appropriate and will direct service by the U.S. Marshal without pre-payment of costs. Plaintiff is informed, however, that this action cannot proceed further until plaintiff complies with this order. Plaintiff is warned that failure to comply with this order may result in dismissal of the action. See Local Rule 11-110.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to terminate King as a defendant, and to add Lateri, Turella, Borges, and Stocker as defendants;

2. Service is appropriate for the following individual defendant(s):

> PENNER,
>
> SWIFT,
>
> JOHNSON-DOVEY,
>
> VANCOR,
>
> TODD,
>
> LATERI,
>
> TURELLA,
>
> BORGES,
>
> STOCKER, and
>
> DIRECTOR OF THE CDCR;

---

[3] The court notes that, according to plaintiff's complaint, plaintiff has not exhausted his administrative remedies. However, because exhaustion is not a jurisdictional requirement for bringing suit, see Rumbles v. Hill, 182 F.3d 1064, 1070 (9th Cir. 1999), and because failure to exhaust is an affirmative defense which can only be raised by defendants, see Wyatt v. Terhune, 280 F.3d 1238, 1245-46 (9th Cir. 2002), dismissal at this time for failure to exhaust is not appropriate.

   3. The Clerk of the Court shall send plaintiff one USM-285 form for each defendant identified above, one summons, an instruction sheet, and a copy of the first amended complaint; and

   4. Within 30 days of the date of service of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

    a. The completed Notice of Submission of Documents;

    b. One completed summons;

    c. Ten completed USM-285 form(s); and

    d. Eleven copies of the endorsed first amended complaint.

DATED: October 4, 2006.

                **CRAIG M. KELLISON**
                UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6         **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7  NEHEMIAH ROBINSON,                    No. CIV S-05-1499-LKK-CMK-P
              Plaintiff,
8       vs.
   M. PENNER, et al.,
9             Defendants.

10  _____/
                    NOTICE OF SUBMISSION OF DOCUMENTS
11       Plaintiff hereby submits the following documents in compliance with the court's
    order:
12           __1__       completed summons form;
                         completed USM-285 form(s); and
13           _____       copies of the first amended complaint.

14  DATED: _____         _____
                                              Plaintiff
15
16
17
18
19
20
21
22
23
24
25
26